Eddy et al. *v.* Roberts.

JOSEPH A. EDDY *et al.*, Appellants, *v.* PORTEUS B. ROBERTS, Appellee.

APPEAL FROM PEORIA.

The main inquiry, under the statute of frauds, where one person is called upon to pay the debt of another, is, whether the promise is an original and independent, or, whether it is collateral to, and dependent upon, the debt or liability of another. If the liability of the original debtor continues, the promise of another to pay his debt should be in writing.

A consideration is necessary to support all promises, and, without it, no action can be maintained upon the promise, whether it is in writing or not.

Where one enters into a simple contract with another, for the benefit of a third person, such third person may maintain an action for the breach, and such a contract is not within the statute of frauds.

THE facts of this case are stated in the opinion of the court. This cause was heard before GALE, Judge, and a jury, at May term, 1856. Verdict and judgment for appellee.

N. H. PURPLE, for Appellants.

MANNING and MERRIMAN, for Appellee.

SKINNER, J. The declaration contains three special counts and the common count for goods sold and delivered. The first alleges that one Williams was indebted to the plaintiffs below; that defendant, in consideration that plaintiffs would release Williams' debt, promised the plaintiffs to pay them the debt of Williams, and that they did release, &c. The record alleges that Williams was indebted to the plaintiffs, for which debt plaintiffs had a lien on property of Williams; that defendant, in consideration that plaintiffs would release said property from their lien, promised plaintiffs to pay them the debt of Williams, and that they did release, &c. The third alleges that Williams was indebted to plaintiffs, that defendant having hands at work for him, in consideration that plaintiffs would advance to them, on defendant's account goods out of plaintiffs' store, promised to pay for the goods, and also to pay plaintiffs the debt of Williams, and that plaintiffs did advance the goods, &c.

The defendant pleaded the general issue and the statute of frauds.

The evidence substantially shows that Williams had been engaged in cutting wood, and employed hands for that purpose; that he made an arrangement with plaintiffs to pay his hands out of their store and obtained credit for the goods, stating that " the debt would be good, for the wood would be theirs till they

got their pay;" that defendant, having bought out Williams, requested plaintiffs to let the hands have goods on his account; that plaintiffs refused unless the debt of Williams was paid; that defendant promised plaintiffs, that if they would let the hands have goods on his account he would pay for the goods, and also the debt of Williams, and that plaintiffs did accordingly let the hands have goods on defendant's account; that Williams being indebted to plaintiffs sold his wood and other property to defendant, and that defendant, as a part of the transaction, agreed with Williams to pay to plaintiffs this debt.

The two first counts are not proved. There is no proof that the debt of Williams was ever released. His liability to plaintiffs, for aught that appears, still continues. There is no proof that plaintiffs had a lien on the wood, or that any supposed lien was released. The remark of Williams, on applying for credit, created no lien in law on the wood, in favor of plaintiffs. They had no lien to release.

The third count is substantially proved, and the question is, is the verbal promise of defendant therein stated, to pay the debt of Williams, binding on him in law?

The statute of *frauds* and *perjuries* declares, "that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the promise or agreement, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereto by him lawfully authorized." This is substantially like the English statute upon the same subject, and similar provisions exist, it is believed, in all of the United States. The plain object of the statute is to require higher and more certain evidence to charge a party, where he does not receive the substantial benefit of the transaction, and where another is primarily liable to pay the debt or discharge the duty; and thereby to afford greater security against the setting up of fraudulent demands, where the party sought to be charged is another than the real debtor, and whose debt or duty, on performance of the alleged contract by such third person, would be discharged. The decisions on this branch of the statute, both in England and the United States, are numerous, and, to a considerable extent, apparently contradictory, insomuch that any attempt to review and reconcile them would be a hopeless undertaking. It cannot be denied that courts in many instances, to prevent the successful interposition of the statute against apparently meritorious claims, and in the *particular case* to avoid a seeming wrong, have departed from the plain letter and spirit of the statute. Hard cases are said to make bad precedents, and, in our judgment, it is not only

better in the general operation, but the imperative duty of the courts to hold, in all cases, to the statute *as it reads*, avoiding all nice, complicated, or shadowy distinctions. By such a course, the law is rendered more certain and uniform in its administration; and principles, instead of mere cases, become the foundation of judicial decisions. The main question for inquiry under the statute is, whether the promise is an original and independent one, or whether it is subsidiary, collateral to, and dependent upon, the debt or liability of another?

If another is primary, or principal debtor, and the relations of debtor and creditor remain unchanged, both as to the right and the remedy, and no trust is created by the transaction out of which the promise arises, such promise is in its nature collateral and not original. If the debt be paid, or duty performed, by him who is primarily liable, the incident, or collateral promise, is of no force for any purpose; there is nothing remaining upon which it can operate. Tested by these rules the contract alleged in the third count is void, if not in writing. The debt of Williams existed at the time of making the promise; Williams continued liable to the same extent as if the promise had not been made; the relations of debtor and creditor were in no manner changed; no remedy, pledge, or security was relinquished; and no trust devolved upon the defendant to execute, by reason of the transaction. *Chapin* v. *Lapham*, 20 Pick. 467; *Russell* v. *Bulk*, 11 Verm. 166; *Tileston* v. *Nettleton*, 6 Pick. 509; *Nelson* v. *Boynton*, 3 Met. 396; *Cahill* v. *Bigelow*, 18 Pick. 369; *Stone* v. *Symmes*, ibid. 467; *Durham* v. *Anledge*, 1 Strob. 5; *Carville* v. *Crane*, 5 Hill 483; *Jackson* v. *Rayner*, 12 John. 291; *Simpson* v. *Patton*, 4 John. 422; *Barker* v. *Bucklin*, 2 Denio 45; *Loomis* v. *Newhall*, 15 Pick. 159.

It is urged that the promise is founded upon a new and independent consideration, moving from the promisee to the promisor, and, therefore, an original undertaking. We may admit that there is a sufficient consideration appearing in the count and proof, and that, aside from the statute, the promise would be obligatory; but the statute steps in and makes the promise void if not in writing. A consideration is necessary to support all promises, for, without such consideration, no action can be maintained upon them, whether in writing or not.

Some promises, as in case of commercial paper, import a consideration. So do sealed instruments; and, in such case, to maintain an action, no extrinsic evidence of a consideration is required. Had the defendant promised, in writing, to pay Williams' debt, without a consideration therefor, valid in law, this would have been a naked promise which could not be enforced. The statute does not change the common law in this respect,

but adds the requisition that the *promise* be in writing. Where the principal and the collateral contracts are made at the same time, the credit given, or consideration passing between the principal parties, may be sufficient to sustain the collateral promise, but such promise must be in writing. Where the collateral promise is subsequent to the creation of the principal contract or debt, the collateral promise must not only be founded on a new consideration, but be in writing. In some of the cases it is said that the promise is an original one, and, therefore, not within the statute, where the promise arises out of some new and independent consideration moving between the newly contracting parties. This general language seems to me to overlook an essential requisite to a valid promise or contract—a consideration—and to strip the statute of that protection it was intended to afford, in the prevention of wrongs to third persons, by the setting up of fictitious contracts, and maintaining them by perjury. A close examination, however, of the cases where similar language occurs, will disclose that many, if not most of them, were where the creditor had a subsisting lien, or security for the debt, which was given up for the benefit of the defendant; where the creditor discharged the original debt; where, by some transaction with the debtor, a trust was created, to be executed by the defendant, in favor of the plaintiff; or, where the promise was made *to* the debtor for the payment of his debt to the plaintiff. The substance of the contract alleged in the third count is this: for an uncertain credit at the store of plaintiffs, the defendant guarantied the debt of Williams, or promised to pay it in a reasonable time, if Williams did not; and no fair construction can take it out of the statute.

The evidence discloses that Williams sold and delivered certain property to defendant, and that defendant, as a part of the transaction, agreed with Williams to pay his debt to plaintiffs. We think that plaintiffs may recover upon this undertaking, although not in writing, declaring on the special contract as made *to* the plaintiffs. Where one enters into a simple contract with another, for the benefit of a third, such third person may maintain an action for breach, and such contract is not within the statute. 1 Chitty's Pl. 4 and 5; *Barker* v. *Bucklin*, 2 Denio, 45; *Schemerhorn* v. *Venderheyden*, 1 John. 139; *Olmsted* v. *Greenly*, 18 ibid. 13; *Arnold* v. *Lyman*, 17 Mass. 400; *Cabot* v. *Haskins*, 3 Pick. 83; 5 Wend. 235; *Hargreaves* v. *Parsons*, 13 M. and W. 561; *Eastwood* v. *Kenyon*, 11 Ad. and El. 438; 2 Parsons on Con. 302, and note *m*; ibid. 307 and 8, and note *w*.

But the plaintiff cannot recover under any count in this declaration. Neither of the special counts are upon this contract, nor can he recover under the general count for goods sold and delivered.

In general, if the plaintiff might recover, had there been no special contract, then he may recover under the appropriate common count, if, at least, the special contract be executed on his part, and nothing be left to be done under it but the payment of money. Here there is nothing upon which the plaintiffs could recover in the absence of the special contract; nor would this count at all inform the defendant of the real cause of action.

Judgment reversed and cause remanded, with leave to the plaintiffs to amend their declaration.

*Judgment reversed.*