### The John Deere Plow Company, Appellant, v. Robert C. Leeper, Appellee.

1. NOVATION, § 2*—*who has burden of proving.* A person who pleads a novation has the burden of establishing it by a preponderance of the evidence.

2. NOVATION, § 1*—*what essentials of.* The essentials of a novation are a previous valid obligation, an agreement of all of, the parties to the new agreement, the extinction of the old obligation and a valid new contract.

3. NOVATION, § 2*—*sufficiency of evidence to establish.* The evidence *held* not to show a novation whereby the seller of a business was released from liability and the purchaser accepted by the former's creditor in his stead.

4. PRINCIPAL AND AGENT, § 223*—*when agent's declarations not evidence of authority.* A witness may not state his conclusion as to what an agent said about his authority.

Appeal from the Circuit Court of Massac county; the Hon. W. W. CLEMENS, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed May 1, 1915.

H. A. EVANS, for appellant.

FRED R. YOUNG, for appellee.

* See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE HARRIS delivered the opinion of the court.

Upon the trial of this case many of the facts were not in dispute, and from the record such facts appear to be as follows:

That prior to the 6th day of May, 1913, appellee was engaged as a partner with Utterbach in a general merchandise business; and as sole owner under the name of Leeper Implement Company, in the implement business. He was at that time a resident and conducting both of said lines of business in Brookport, Illinois. May 6, 1913, in Oklahoma City, he met and disposed of his interest in the partnership business to one C. L. Howell, who was at that time a resident of Oklahoma; that in a short time thereafter Howell became a resident of Brookport, Illinois, and took possession of the partnership business and a further agreement was entered into by and between appellee and said Howell in and by which Howell became the owner of the implement business and took possession thereof and conducted the same from that time to about October, 1913, when he shipped the implements on hand to Clinton, Oklahoma, and returned to Oklahoma. Appellee and Howell, at the time of bringing suit, November 3, 1913, were residents of Oklahoma.

It is further admitted that on May 6, 1913, appellee was indebted to appellant in the sum of $1,929.31, which was notes and open accounts, viz.: $208.59 open account for stock carried over from year 1912; $1,379.48 for stock purchased for year of 1913; and $341.24 in two promissory notes held by appellant against appellee for machinery purchased and sold. Most of this indebtedness falling due about October 1, 1913.

The item of $1,379.48 was an order signed "Leeper Implement Company," at Brookport by direction of appellee, December 6, 1912, for goods, which were shipped to appellee at Brookport, February 20, 1913, which were received and in stock in May, 1913, when the business was transferred by appellee to Howell.

The dispute arises over the oral agreement between appellee and Howell and appellee and appellant. Appellee says he sold the store and a part of the implements to Howell and made an agreement with him that he would let him have the entire implement business if it was satisfactory to the company. That agreement was made known to Mr. Schmidt, the agent for appellant, the latter part of May, 1913. Appellee asked Schmidt if it would be satisfactory for him, appellee, to turn over the business to Mr. Howell so far as the company was concerned. Appellee says this had reference to the machinery shipped in 1913 and Schmidt said, after talking with Howell in his, appellee's, presence, it would be satisfactory to accept Howell "in my place and release me." Appellee said he owed appellant the sum of $215; all other of his indebtedness was assumed by Howell. Howell, a witness called by appellee, says there were two trades: First a trade for one-half of general store and part of machinery accounts, that was about May 6, 1913; second, about May 20, 1913, for the rest of the machinery, the machinery he bought for that year's business "I traded him an interest in some Texas land worth about $1,000, and a difference coming to me in first trade and I assumed all indebtedness on the machinery" except two notes due appellant. Howell further says, within a few days after second trade, appellee introduced Mr. Schmidt as representative of appellant, and as to conversation corroborates evidence of appellee, except in obtaining company's consent and agreement to release appellee.

Schmidt, a witness for appellant, denies that he agreed to release Leeper from payment of account. He says appellee did not ask to be released but said he, appellee, stood behind the payment of the account. This is all the evidence tending to prove novation upon which appellee relies under the law to be released from payment of balance due appellant.

The law is established that a party pleading nova-

tion must prove it by a preponderance of the evidence. *Netterstrom v. Gallistel,* 110 Ill. App. 352. Three parties and four things are necessary to effect novation, original debtor, substituted debtor and the creditor, and these parties must be present and join in the contract. The four essentials: First, a previous valid obligation; second, the agreement of all the parties in the new contract; third, the extinction of the old obligation; fourth, a valid new one. If any one of these essentials is wanting, there could be no novation. *Hayward v. Burke,* 151 Ill. 121.

It is not contended that appellant or its agent was present at the time either the first or second trade was made. And waiving for a moment the necessity of its presence at that time, the evidence does not prove that appellant ever agreed to release appellee. This is only mentioned and insisted upon by appellee himself in an indefinite statement of what was said, the record giving his conclusions of what was said. The facts proven of what took place after this conversation are as consistent with appellant's theory as with appellee's theory. The verdict is for the amount of the two notes, $341.24, whereas appellee admits only the sum of $215, showing that the jury did not adopt the amount claimed to be due by either party. There was no theory upon which this case was tried that supports the amount of the verdict. We are of the opinion that the evidence of novation does not support the verdict, and that the verdict is clearly against the manifest weight of the evidence, and the motion for a new trial should have been sustained.

It was error to permit the witness to give his conclusion as to what the agent said about his authority to collect for appellant. The statement of the agent as to his authority is not competent.

Without novation was proven by appellee, the evidence offered would not be competent upon any theory, as it would simply tend to prove a contract *nudum pactum* invalid and unenforceable, a promise to pay

the debt of another within the Statute of Frauds, and invalid.

The error argued as to the modification of instructions we do not regard as misleading, but this objection may be removed on another trial of the case.

Therefore for the errors sustained, this judgment must be reversed and the cause remanded.

*Reversed and remanded.*